PAPERCRAFT CORPORATION, a Pennsylvania Corporation, and Knomark, Inc., a New York Corporation, Plaintiffs,

v.

The PROCTER & GAMBLE COMPANY, an Ohio Corporation, Defendant.

Civ. A. No. 77-45.

United States District Court, W. D. Pennsylvania.

Sept. 27, 1977.

Marcus Aaron, II, Pittsburgh, Pa., for plaintiffs.

Alexander Unkovic, Frederick J. Francis, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

Plaintiffs brought this action seeking a declaratory judgment that certain patents held by the defendant are invalid or are not infringed by the manufacture, sale or use of plaintiffs' fabric conditioner product. Defendant has filed a motion under Rule 12(b), Fed.R.Civ.P., seeking to have the action dismissed or transferred and alleging, *inter alia*, that venue in this dis-

trict is improper under 28 U.S.C. § 1391(c).[1] The motion to transfer will be granted.

The general venue statute provides that a corporation may be sued in any judicial district in which it is (1) incorporated, (2) licensed to do business, or (3) doing business. 28 U.S.C. § 1391(c). The Procter & Gamble Company is an Ohio corporation with its principal place of business in Cincinnati and, according to uncontradicted evidence submitted by the defendant, The Procter & Gamble Company is not incorporated or licensed to do business in Pennsylvania.[2] Plaintiffs have asserted, however, that The Procter & Gamble Company is in fact "doing business" in Pennsylvania, primarily through its wholly-owned subsidiary The Procter & Gamble Distributing Company. The distributing company is also an Ohio corporation having its principal place of business in Cincinnati. Pursuant to a contract, the distributing company purchases from the parent all of the Procter & Gamble branded products produced or purchased by the parent company. These products are then distributed by the subsidiary to wholesale, retail and other customers.

The record before the court discloses the following details about the relationship between the parent corporation and the subsidiary distributing company:

The distributing company has its own board of directors and officers. All five of the directors of the distributing company are also officers of the parent corporation. Two of the directors also serve on the 17-person board of directors of The Procter & Gamble Company. The meetings of the board of directors of the subsidiary are separate and distinct from the meetings of the board of the parent corporation. Meetings of the shareholders of the two corporations are likewise separate and distinct. Each corporation maintains separate books of account and records. The two corporations do not file consolidated federal tax returns.

The Procter & Gamble Company employs approximately 10,400 persons, all of whom have their principal places of employment located in Ohio. The Procter & Gamble Distributing Company has approximately 5,650 employees, none of whom are employees of The Procter & Gamble Company. The salaries of those persons who are officers of both corporations are paid to those individuals by The Procter & Gamble Company which in turn charges, and is reimbursed by, The Procter & Gamble Distributing Company for the portion of their time spent on the business of the distributing company.

Plaintiffs have presented evidence to show that the distributing company does business in Pennsylvania, but plaintiffs have failed to show that the corporate separation between the distributing company and the defendant parent corporation is fictional or that the distributing company is simply an alter ego of the parent corporation. In fact, the evidence demonstrates that much effort has been expended to assure that the subsidiary will remain a separate corporate entity.

■ Where a parent corporation is totally removed from this district, this court cannot subject the parent to venue within this district solely because the parent corporation owns a profitable subsidiary which is doing business here.[3] Such a limitation on venue is consistent with the Supreme Court's ruling that where the separation between a parent corporation and a subsidi-

---

1. Defendant's motion also challenges the existence of personal jurisdiction, proper service of process, and a justiciable controversy. The language of 28 U.S.C. § 1406(a) permitting an action to be transferred makes it appropriate for this court to examine the question of venue without reaching the issue of whether this court has personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

2. See Affidavits of James W. Nethercott, Senior Vice President and Secretary of The Procter & Gamble Company.

3. See discussion of plaintiff's argument in *N-Triple-C Inc. v. American Telephone & Telegraph Co.*, 377 F.Supp. 813, 815 (E.D.Pa.1974).

ary is real, albeit formal, the subsidiary's activities are not a sufficient basis for subjecting the non-resident parent to the jurisdiction of the forum state. *Cannon Manufacturing Company v. Cudahy Packing Company,* 267 U.S. 333, 335–337, 45 S.Ct. 250, 69 L.Ed. 634 (1925). See 2 Moore's Federal Practice ¶ 4.25[6] (2d ed. 1970). See also *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corporation,* 461 F.2d 1140, 1142 (3rd Cir. 1972); *Frito-Lay, Inc. v. Procter & Gamble Company,* 364 F.Supp. 243, 247 (N.D.Tex.1973). The *Cannon* rule has been applied to questions of venue as well as questions of jurisdiction. *Allis-Chalmers Manufacturing Co. v. Gulf & Western Industries, Inc.,* 309 F.Supp. 75 (E.D.Wis.1970).

■ Thus, the "doing business" test of the venue statute must be met not by the activities of the subsidiary distributing company but solely by the activities of the parent corporation itself. These activities must be more than the minimum contacts necessary to subject the defendant to service of process in Pennsylvania. *Trinity Metals v. Andy International, Inc.,* 424 F.Supp. 966, 968 (E.D.Pa.1977). A corporation is held to be "doing business" for purposes of § 1391(c):

> "if its business activities within the district are such that its business has become localized and is an operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business . . . . (footnotes omitted)"

*Remington Rand, Inc. v. Knapp-Monarch Co.,* 139 F.Supp. 613, 620–621 (E.D.Pa.1956).

■ An affidavit submitted by the defendant states that The Procter & Gamble Company does not have any plant or real property of any nature within this district or within this state; that the company has no offices here and that no officers or employees are located here; and, that The Procter & Gamble Company has neither a telephone nor a telephone listing in this district.[4] On the record before us, the only activities of The Procter & Gamble Company within Pennsylvania appear to be the periodic auditing of certain books of the subsidiary and the placing of advertisements for products sold by the distributing company. The Procter & Gamble Company spends an estimated $11,000,000 in Pennsylvania annually for advertising, primarily on television and in magazines. Without more, we cannot find that these activities constitute "doing business" within the Western District of Pennsylvania. *Irvin v. Daniels Company Contractors, Inc.,* 199 F.Supp. 766, 768 (W.D.Pa.1961).

■ Thus, we conclude that venue in this district is improper. The plaintiffs' action, however, could have been brought originally in Ohio, and therefore it appears that the interest of justice favors a transfer rather than a dismissal. Furthermore, the defendant has filed an action (No. C77–229) in the federal court in Toledo, Ohio, concerning two of the patents at issue in this case. Defendant's motion to transfer this case to the Northern District of Ohio, Western Division, at Toledo, will be granted.

---

4. See Affidavits of James W. Nethercott.